THE T. T. HAYDOCK CARRIAGE COMPANY, Appellant, vs. PIER, Garnishee, etc., Respondent.

*September 28 — October 15, 1889.*

*Voluntary assignment: Married women.*

Prior to the enactment of ch. 68, Laws of 1889, a married woman could not be an assignee for the benefit of creditors, because she could not bind herself by the bond which such assignee is required to execute.

APPEAL from the Circuit Court for *Fond du Lac* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

On the 20th of January, 1888, the appellant commenced an action on a promissory note of Bartell Bros., a firm consisting of J. M. Bartell and P. C. Bartell. Judgment was obtained, in said action, against the said Bartells, for the sum of $823.17.

At the time said action was commenced, the appellant also commenced a garnishee action against the respondent *(Kate Pier)*, claiming that she had property or money in her hands belonging to said Bartell Bros., or to one of them. The respondent answered in said garnishee action, and denied any indebtedness to the said Bartell Bros., or

to either of them, and also denied that she had in her possession or under her control any real estate, personal property, effects or credits of any description, belonging to the said defendants, the Bartells, or to either of them; and she further answered that P. C. Bartell was doing business as a dealer in sewing-machines, etc., and that on December 22, 1887, the said P. C. Bartell made an assignment to her as assignee for the benefit of his creditors, setting out at length such assignment, and that by virtue of such assignment she had taken possession of the property of the said P. C. Bartell, and was so in possession at the time the garnishee summons was served on her. Upon this answer of the garnishee the appellant took issue.

The issue between the appellant and the garnishee was tried by the court and a jury. Upon the trial in the circuit court it appeared that the respondent had property in her hands, at the time the garnishee action was commenced, appraised at $2,870.32; book-accounts, $617.19. That $739.36 of this property was taken from her possession upon chattel mortgages existing on it at the date of the assignment; and $310 were goods held on commission, which were also taken from her possession. The balance of the goods were sold by her, and that she realized from the goods sold and amounts collected the sum of $606.04. It also appeared that nearly all the property that came to the hands of the respondent was goods which belonged to the firm of Bartell Bros. at the time the note was given upon which the action against Bartell Bros. was brought.

The appellant contended, on the trial in the circuit court, that the assignment was made for the purpose of hindering, delaying, and defrauding the creditors of Bartell Bros., and was therefore void; and it was also contended that the assignment was void in law, for the reason that the assignee, at the time the assignment was made to her, was, and still is, a married woman. After hearing all the evi-

dence, the learned circuit judge nonsuited the plaintiff, and rendered judgment against it for costs. From this judgment the plaintiff appealed to this court, and seeks a reversal of the judgment of the circuit court upon the two grounds taken on the trial: *First,* that the evidence shows that the assignment was fraudulent and void, because made to hinder, delay, and defraud the creditors of the assignor; and, *second,* that it was void in law, because the assignee was at the date of the assignment, and still is, a married woman.

*Edward W. Phelps,* attorney, and *Geo. P. Knowles,* of counsel, for the appellant.

*Kate H. Pier,* for the respondent.

TAYLOR, J.   As we have concluded that a married woman cannot lawfully be an assignee of a debtor under an assignment made for the benefit of his creditors under our statute, we do not feel called upon to express an opinion as to whether the learned circuit judge was justified in nonsuiting the plaintiff on the question as to whether the assignment was void because made to hinder, etc., the creditors of the assignor.

It was shown on the trial that the assignee was possessed of a separate estate of her own, that she was an attorney at law, and that she had done business on her own account for several years before this assignment was made. It is contended by the learned counsel for the appellant that the statute under which this assignment was made evidently contemplates that the assignee shall be a person who can bind himself or herself by his or her personal bond, and that a person who is incapable of binding himself or herself by a personal obligation or bond is disqualified to act as assignee; that an assignment, therefore, to a minor or an insane person would be void; that it is equally clear that a married woman cannot lawfully be appointed as-

signee, under the statute, unless she can bind herself and her property by the execution of the personal bond required by such statute.

We think it very clear that our statute regulating assignments contemplates that the assignee must be a person who is competent to bind himself or herself by a personal obligation such as is required by the law to be given by the assignee. The main object of the statute was to so regulate assignments as to protect the interests of the creditors. Under the common law, and before the legislature intervened to regulate assignments, the crying evil of assignments was that no interest was secured or protected except that of the assignor. Under the present statute the assignee is required to give a personal bond; and it certainly contemplates that when the bond is given by the assignee he or she shall be bound by such bond. The material inquiry is whether a married woman can bind herself by a personal bond given in an assignment proceeding under the statute. On the part of the learned counsel for the respondent it is contended that she can so bind herself. It is unnecessary to cite authorities to support the proposition that a married woman could not, under the rules of the common law, bind herself by such bond.

Is there anything in our statute that has given a married woman the privilege of assuming this responsibility, and subjected her to responsibilities against which the common law protected her? The immunity which the common law gave to the married woman of not being bound by her personal obligations was rather in the nature of a privilege and protection than of a disability, and this court, as well as all others, in giving construction to statutes which are intended to remove the disabilities of married women, has been careful not to construe them so as to remove the protection which the common law afforded; and it has only held that personal contracts shall bind the married woman

when they relate to, and are necessary to protect her in the enjoyment of, the benefits of the enabling statutes. These statutes having given the married woman the right to hold, use, sell, and dispose of real and personal property as though she were single, the court holds that she may bind herself by personal contracts in regard to such property. So she, having the power to engage in trade and business, may bind herself in respect to such trade and business. *Conway v. Smith*, 13 Wis. 125; *Leonard v. Rogan*, 20 Wis. 540; *Beard v. Dedolph*, 29 Wis. 136; *Meyers v. Rahte*, 46 Wis. 655, 658; *Dayton v. Walsh*, 47 Wis. 113; *Cramer v. Hanaford*, 53 Wis. 85; *Bouck v. Enos*, 61 Wis. 660; *Krouskop v. Shontz*, 51 Wis. 204; *Houghton v. Milburn*, 54 Wis. 554; *Brickley v. Walker*, 68 Wis. 563. These cases illustrate the extent to which this court has gone in holding the married woman liable upon her personal contracts; but an examination of them will show that the contracts by which she was held personally bound were all such as related to her individual property, or to her earnings, or her lawful business transactions. Previous to the statute which gave her the right to her earnings, she could not be held liable in an action at law in relation to matters which concerned her separate business. See *Todd v. Lee*, 15 Wis. 365; *Meyers v. Rahte*, 46 Wis. 655, 658. The married woman in this state is still protected by the rules of the common law in all transactions which do not relate to her separate estate, her separate trade or business, or to contracts relating to her personal services. Her liability upon a bond, note, or other contract which is not given or made by her in relation to the matters above stated, must be determined by the rules of the common law. *Kavanagh v. O'Neill*, 53 Wis. 101, 105; *Petesch v. Hambach*, 48 Wis. 443, 449; *Elliott v. Peirsol*, 1 Pet. 328; *Bank v. Partee*, 99 U. S. 325, 330; *Gosman v. Cruger*, 69 N. Y. 87; *Morse v. Toppan*, 3 Gray, 411; *Norton v. Meader*, 4 Sawy. 620, 624; *Caldwell v. Walters*, 18 Pa. St. 79; *Dorrance v. Scott*, 3 Whart. 313.

The T. T. Haydock Carriage Co. vs. Pier.

That this rule extends to official, judicial, or other bonds, when such bonds are not executed in proceedings relating to her separate estate, is also well established. Harris, in his work Contracts of Married Women, sec. 299, says: "Generally, where her separate property is involved in litigation, and it becomes necessary, under the law or rules of the court, to execute judicial bonds, such as injunction bonds, replevin bonds, appeal bonds, attachment bonds, bonds for costs, and the like, the power will be implied as a necessary incident to the protection or preservation of her separate estate. Except for such purposes, she cannot generally execute a bond."

While it is admitted that the law is as above stated, it is, however, insisted — *first*, that at common law a married woman could act as trustee; and, *second*, that under our statute she is authorized to act in the capacity of a trustee, and, as a necessary incident to her right to act as trustee, she can bind herself by executing the bond required by law to qualify her to act as such trustee. We think the authorities are clear that at common law a married woman was not a competent trustee in any case in which the law required, as a prerequisite to the power to act as trustee, the execution by the trustee of a personal bond for the faithful execution of such trust. Perry, in his work on Trusts (3d ed.), sec. 50, says: "Another inconvenience arises in probate and other trusts where the trustee may be required to give bonds for the faithful administration of the trust. . . . A married woman can enter into contracts only in relation to her sole and separate estate; and how far she can bind herself or her estate by a bond to execute a trust in property, the beneficial interests in which belong to another, would always be a perplexing question, although the sureties in such a bond might be liable." Again, in sec. 51, he says: Courts "will not appoint married women to such offices" (meaning trusts where the trustee is required to give a personal bond for the faithful execution of the trust).

That this rule of not permitting a married woman to be a trustee in cases where by law it became necessary for the trustee to give a personal bond to secure the faithful performance of the trust, was the established policy of this state previous to the enactment of ch. 68, Laws of 1889, is clearly shown by the fact that a married woman was not permitted to act as an executrix or administratrix, nor to act as a guardian of minors, except of her own children. Secs. 3802, 3992, R. S. 1878. It is true that this disability was removed by said ch. 68, Laws of 1889; but such removal of disability cannot validate an appointment which was made in violation of the law as it was at the time of such appointment. These sections of the Revised Statutes of 1878 were clearly not supposed to be in conflict with the law regulating the rights of married women which appear in a previous chapter; and, if they are in conflict, still, as to these particulars, the sections above quoted must prevail. See subd. 14, sec. 4972, R. S., as to the construction of statutes.

It is claimed that these sections are not to be considered as a statutory declaration of the disabilities of a married woman, but as limitations of her rights in certain specified cases, and consequently that there can be no fair deduction drawn from this legislation that it was intended to prevent a married woman from performing the duties of a trustee in other cases, although, in such other cases, it became necessary for her to give a personal bond in order to be appointed. This contention would have great force if either by the statutes regulating the rights of married women, or by the common law, it could be fairly held that she was legally authorized to take upon herself the performance of a trust which required from her the execution of a personal bond. We have seen, from what is stated above, that she was not considered by the courts competent to take upon herself the execution of a trust, when by law no one could be trustee without giving a personal obligation for the

faithful execution of such trust, and that the courts would refuse to appoint her in such case when the appointment was to be made by a court.

The other argument in favor of her power is that the statutes regulating the rights of married women, by a just construction, give her the right to become such trustee, and consequently the right to bind herself personally by giving the bond required by law. It is claimed that such power is conferred by secs. 2343, 2345, R. S. 1878, which secure to the married woman her individual earnings. It is said that securing to her her individual earnings necessarily implies a right on her part to enter into business from which she may derive earnings; and that such construction of the statute has been approved by this court. See *Brickley v. Walker*, 68 Wis. 563, 571, 572, and cases cited in the opinion. Although this court has shown a disposition to give a liberal construction to the provisions of the statute which remove the burdens which the common law imposed upon married women, there has been no disposition to so construe the law as to take away the protection which such law gave to her in relieving her from liability on her personal contracts; and it is only when the removal of such protection as to her personal liability upon her contracts becomes necessary to the full enjoyment of her rights under the statute that she has been held capable of binding herself by a personal contract. See cases above cited. The statute which secures to a married woman her individual earnings, and which, by a most liberal construction, authorizes her to engage in the ordinary pursuits from which earnings may be derived, cannot, we think, be fairly construed to authorize her to assume the execution of official trusts, when the law requires that the person assuming such trusts shall execute a personal bond to secure the faithful performance thereof. Such construction would, as we think, be détrimental to her interests, rather than beneficial to them, and would subject

her to burdens and liabilities against which she was protected by the common law.  If ch. 68, Laws of 1889, makes a married woman competent to assume the execution of every trust, and therefore, by implication, makes her competent to bind herself by the execution of any bond required by law to be executed by the trustee, it might be urged with considerable force that the enactment of said chapter was another legislative declaration that such right to act as trustee did not exist in this state under the laws theretofore in force.

In view of all the laws in force in this state regulating the rights of married women at the time the respondent undertook to assume the duties of assignee of the said P. C. Bartell, we are constrained to hold that the bond executed by her was void so far as she was concerned, and that in consequence thereof the assignment was void, and that she must respond to the appellant for the money and property in her hands belonging to the said P. C. Bartell, or to the said firm of Bartell Bros., at the time of the service of the garnishee summons upon her.  Of course she will not be held liable for property which she received as such assignee and which was taken from her possession by title paramount to the title of the said Bartells or either of them. Whether she should be held liable beyond the amount she has received upon the sale of said property must depend upon her good faith in making such sale.  This matter, we think, should be adjusted by the circuit court.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded to the circuit court to enter judgment as indicated in this opinion.  The court may, if it is deemed necessary, take further testimony as to the amount of money or property in the hands of the respondent subject to garnishment by the plaintiff.

See note to this case in 43 N. W. Rep. 502.— REP.